**Norman RUDOW, Plaintiff,**

**v.**

**The CITY OF NEW YORK, the City of New York Commission on Human Rights, and Lois Whitman, Defendants.**

**No. 86 CIV 0961 (LBS).**

United States District Court,
S.D. New York.

Sept. 3, 1986.

Stillman, Friedman & Shaw, P.C. New York City, for plaintiff; Julian W. Friedman, Scott M. Himes, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendants the City of New York

**1458**

and the City of New York Com'n on Human Rights; Julian Bazel, Dennis deLeon, Frederick P. Schaffer, Gabriel Taussig, Asst. Corp. Counsels, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant Lois Whitman; Marvin E. Frankel, Bonnie Blacklock, of counsel.

## OPINION

SAND, District Judge.

## I. INTRODUCTION

Plaintiff, Norman Rudow, brings this action against Lois Whitman, the City of New York and its Commission on Human Rights ("the Commission"), alleging three grounds for relief. Plaintiff's first and third claims are brought under 42 U.S.C. § 1983 and allege that his "due process" rights under the fourteenth amendment to the United States Constitution were violated by defendant Whitman's conduct during certain Commission proceedings, subsequent state court proceedings, and occasions related thereto. Plaintiff's second claim for relief charges the same alleged wrongs under the New York Judiciary Law and pursuant to that law, seeks treble damages. Defendant Whitman has moved to dismiss plaintiff's complaint pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Whitman also alleges that this "case qualifies as the kind of meritless and vexatious action justifying [an] award [of attorneys' fees]" pursuant to 42 U.S.C. § 1988. Defendants City of New York and the Commission (together the "City defendants") have moved for summary judgment pursuant to F.R.Civ.P. 56.

For the reasons elaborated below, we grant defendant Whitman's motion to dismiss, but deny her motion for attorneys' fees. In addition, we grant the City defendants' motion for summary judgment on plaintiff's federal claims, but not on plaintiff's state cause of action.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is the former president of the Mid-Atlantic region of Litton Office Product Centers. The tortured history of this case began on August 6, 1981, when Brenda Alvarez, a former Litton employee over whom plaintiff had indirect supervisory responsibility, filed a complaint with the Commission. Alvarez contended that she had been sexually harassed by Litton employees, including plaintiff, who allegedly engaged in a pattern of sexual advances and unconsented touching. A hearing on Alvarez's complaint was held before the Commission in May, 1982. There defendant Whitman prosecuted the complaint on behalf of the Commission in her capacity as staff attorney. Whitman later became Acting General Counsel to the Commission and served in that capacity from approximately September, 1982 to December, 1982 when she became General Counsel. She remained in that post until September, 1985, when she resigned. Exh. G (at ¶ 1) to Affidavit of Julian W. Friedman ("Friedman Aff.").

At the Commission hearing, Alvarez testified along with two other female Litton employees regarding plaintiff's repeated sexual advances. Alvarez also testified that a Dr. Nam Geun Yoo had prescribed valium for her and had given her a note (admitted into evidence), that she in turn showed to her employer. This note confirmed Alvarez's treatment and stated that she was "suffering nervous condition and needs rest with medication, she is now taking valium 5 mg." Exh. 2 to Affidavit of Julian Bazel ("Bazel Aff.").

The Commission sustained Alvarez's complaint in a decision and order issued January 10, 1983 and awarded her $15,-188.97 in damages. Exh. 3 to Bazel Aff. The monetary award was settled by Alvarez and Litton, without Rudow contributing. The Supreme Court, New York County, upon Rudow's petition for review, confirmed this determination on March 17, 1984. *Rudow v. New York City Commission on Human Rights*, 123 Misc.2d 709,

474 N.Y.S.2d 1005 (N.Y.Sup.Ct.1984). Plaintiff then appealed to the Appellate Division of the New York Supreme Court. While that appeal was being briefed, however, plaintiff learned that Alvarez's testimony concerning Dr. Yoo had been false and that the doctor's note was a forgery, facts which Alvarez subsequently admitted. Plaintiff moved to supplement the record before the Appellate Division to include this information. The Appellate Division, which had denied an earlier motion by Rudow to supplement the record with evidence that his previous attorney had defrauded both the Commission and him, granted plaintiff's motion. Nevertheless, it affirmed without opinion the decision of the Supreme Court. The Court of Appeals on December 17, 1985, denied plaintiff's motion for leave to appeal.

While these proceedings were taking place, counsel for plaintiff began a letter campaign for purposes of bringing Alvarez's malfeasance to the attention of City officials. After failing to receive what he considered to be a satisfactory response, Rudow filed a notice of claim with the City Comptroller asserting that he was filing against all the instant defendants as well as other Commission employees and officials a $15 million claim alleging deprivation of his rights. This was followed by the appearance on July 17 and 18, 1985 of two articles in the New York Post publicizing the Alvarez matter. Thereafter, the Corporation Counsel, by letter dated August 26, 1985, notified the Court of Appeals that it would advise the Commission's chairperson that the Commission's order would have to be vacated for purposes of taking additional evidence. The Corporation Counsel also requested that the Court of Appeals defer action on the pending motion. Prior to doing this, the Corporation Counsel wrote to Alvarez informing her of the letter he would send to the Court of Appeals. The Corporation Counsel told Alvarez: "[W]hatever impression you may have had in the past, you should understand that there is no attorney-client relationship between you and any City Attorney. This means that if your interests are to be represented, you must either represent yourself or secure counsel." Exh. 34 to Bazel Aff.

In response to the Corporation Counsel's letter, Alvarez commenced a proceeding of her own pursuant to Article 78 of the New York Civil Practice Law & Rules. She sought an order that would prohibit the Corporation Counsel from advising the Commission to vacate its prior order. Her application was denied, but before the Commission had an opportunity to vacate its order and reconsider Alvarez's claim against Rudow, Alvarez and Rudow jointly requested that no further action be taken. They then entered into a stipulation, dated March 25, 1986, requesting again that the Commission conduct no further proceedings on Alvarez's complaint, and waiving any rights they may have had to further proceedings on the matter. Exh. 45 (at page 3) to Bazel Aff.

We return now to defendant Whitman's dealings with Alvarez. Whitman first met Alvarez in 1981 when Alvarez initially filed her complaint with the Commission. Reply Affidavit of Lois Whitman, dated June 2, 1986, at ¶ 1. Following what she alleges was "an almost invariable practice in the agency during [her] seven years of service there," Whitman represented both the complainant, Alvarez, and the Commission in the administrative hearings and court proceedings that followed. *Id.* at ¶ 2. Whitman also claims that the Commission attorneys regularly informed complainants (and she so informed Alvarez at the outset) that the attorney-client privilege would cover all of their communications. Exh. G. (at ¶¶ 3–4) to Friedman Aff.

Subsequent to the administrative hearing, defendant Whitman received authorization to act as "Special Assistant Corporation Counsel" in actions and proceedings in the Supreme Court for review or enforcement of the Commission's actions. Thus, when plaintiff petitioned for review of the Commission's order in the Supreme Court, it was Whitman who defended that order. While her delegated authority did not explicitly authorize representation of Alvarez,

Whitman represented in court papers that she was acting on Alvarez's behalf. Bazel Aff. at ¶ 12. Whitman made the same representation in her first appearance in the Appellate Division. Bazel Aff. at ¶ 16.

Whitman's appearance in the Appellate Division is subject to scrutiny for another reason. Her designation as "Special Assistant Corporation Counsel" did not cover judicial proceedings beyond the Supreme Court level. *See* Exh. 4 to Bazel Aff. Whitman claims she had observed Commission attorneys handle appeals before both the Appellate Division and the Court of Appeals during her tenure with the Commission, Exh. G. (at ¶¶ 14–15) to Friedman Aff., and mistakenly believed she was authorized to appear in the Appellate Division. Whitman thus submitted papers in opposition to both plaintiff's motion to supplement the record and the appeal itself. The brief and affidavit Whitman submitted in opposition to Rudow's motion to supplement the record allegedly were not reviewed by either of the City defendants. Exh. A (at ¶ 5(e)) to Friedman Aff.

When Whitman was first served with plaintiff's motion to supplement the record, she allegedly consulted with Alvarez and learned that the perjury and forgery contentions were true, facts Whitman did *not* report to the Commission. Exh. A. (at ¶ 5(c) & (d)) to Friedman Aff. Instead, Whitman disclosed Alvarez's admission in an *ex parte* communication to the Administrative Law Judge ("ALJ") who had presided over the hearing. In response, he allegedly advised Whitman that knowledge of the perjury and forgery would not have altered his ultimate determination. Exh. A (at ¶ 5(d)) to Friedman Aff. According to Whitman, her conduct was in conformity with her ethical obligations, and her papers neither admitted nor denied the veracity of plaintiff's allegations. Exh. G (at ¶ 10) to Friedman Aff.; *see also* Exh. B (at ¶¶ 5–12) to Friedman Aff. Defendant Whitman continued to oppose supplementation of the record in a motion before the Appellate Division for reargument and in a motion before the New York Court of Appeals for leave to appeal.

After the newspaper accounts regarding the case appeared in the New York Post in July, 1985, Whitman met with Marcella Maxwell, Chairperson of the Commission, and the Corporation Counsel. It was at this meeting that the City defendants allege they first became aware of the content of the papers Whitman had submitted in opposition to plaintiff's motion to supplement the record. Exh. A (at ¶¶ 5 & 6) to Friedman Aff.; *see also* Exh. 41 to Bazel Aff. Whitman, however, alleges that at an April 5, 1985 meeting, she informed the Chief of the Appeals Division of the Corporation Counsel that the Alvarez case was on appeal. Exh. G (at ¶ 13) to Friedman Aff. After apologizing for her misunderstanding as to the breadth of her special designation, Whitman claims she was informed that "Mr. Koerner ... would not take the case away from [her], since [she] had won it at the Appellate Division[.] [She was] asked ... to send [Mr. Koerner] copies of [her] brief to the Appellate Division and the decision." Exh. G (at ¶ 14) to Friedman Aff. Whitman claims she complied with Koerner's request and, in addition, sent memoranda to Chairperson Maxwell and to the Executive Director of the Commission, informing them of Koerner's determination. *Id.*

## III. DISCUSSION

### A. *Defendant Whitman's Motion to Dismiss*

Plaintiff has submitted both his own affidavit and that of his attorney, Julian W. Friedman, Esq., and, thus, urges the Court to treat defendant Whitman's motion as one for summary judgment. Defendant Whitman, in turn, has submitted her own reply affidavit in support of the motion. Under these circumstances, we will treat her motion to dismiss as one for summary judgment.[1] Therefore, the standard gov-

---

1. F.R.Civ.P. 12(b) provides in pertinent part: "If, on a motion asserting the defense numbered

(6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, mat-

erning Rule 56 motions applies, and the motion may be granted only if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). Moreover, in determining whether to grant summary judgment, we "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984). Only if we are persuaded that the suit can have but one possible outcome may we grant summary judgment. *See Reliance Insurance Co. v. Barron's*, 442 F.Supp. 1341, 1343–44 (S.D. N.Y.1977).

Defendant Whitman contends that the doctrine of absolute immunity bars plaintiff's two federal claims and that the even broader state doctrine of absolute immunity bars his state claim. Plaintiff counters that absolute immunity is not applicable where its intended beneficiary has acted beyond the scope of her authority, jurisdiction and duties. More specifically, plaintiff claims that by acting on Alvarez's behalf while simultaneously representing the Commission, Whitman falls without the absolute immunity umbrella in the same way as do prosecutors who serve in a conflicting "dual capacity" as governmental and private advocates. Plaintiff also claims that since Whitman exceeded the bounds of her designated representation, she would not be entitled to absolute immunity under any circumstances with respect to her conduct at the appellate levels.

1. *The Federal Claims: Whitman's Dual Capacity*

■ The federal doctrine of absolute immunity shields from section 1983 liability those, such as defendant Whitman, who have served as government counsel in proceedings that are "functionally comparable" to judicial proceedings. *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1977). "Functionally

comparable" proceedings include civil and criminal suits as well as administrative proceedings. *See, e.g., Ackerman v. State Board for Professional*, 83 Civ. 7871 (S.D. N.Y. Nov. 16, 1984) [Available on WEST-LAW, DCTU database]; *see also Butz, supra*, 438 U.S. at 504, 98 S.Ct. at 2909; *Martin Hodas, East Coast Cinematics v. Lindsay*, 431 F.Supp. 637, 642–43 (S.D.N.Y. 1977). The policy supporting this immunity grant relates to the cost that would otherwise be exacted, *i.e.*, that government counsel would be unable to perform their duties without intimidation or harassment. *Butz v. Economou, supra; see also Imbler v. Pachtman*, 424 U.S. 409, 424–25, 96 S.Ct. 984, 992–93, 47 L.Ed.2d 128 (1976). But for the doctrine, government attorneys " 'might hesitate to bring forward some witnesses or documents' for fear that the proof might turn out to be false, subjecting them to liability." *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir.1986) (quoting *Butz, supra*, 438 U.S. at 517, 98 S.Ct. at 2916). "Although the immunity may occasionally preclude redress for defamation, it recognizes the free speech needs of litigating adversaries." *Id.* at 573. The doctrine is limited in application, however, to those government counsel working within the scope of their authority, jurisdiction and duties. *See Imbler v. Pachtman, supra*, 424 U.S. at 410, 418, 422, 96 S.Ct. at 985, 989, 991.

Plaintiff contends that the doctrine is inapplicable to defendant Whitman at all levels of her representation because she purported to be counsel not only for the Commission, but for Alvarez as well. Plaintiff argues that the conflict of interest inherent in this dual representation strips Whitman of her absolute immunity. We disagree.

■ While the shield of absolute immunity may be lost by a prosecutor when acting on behalf of a private client, such a situation is not at all analagous to the circum-

---

ters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."

This Court notified the parties that defendant Whitman's motion would be treated as a motion for summary judgment and gave them an opportunity to file additional papers.

stances here. In the former situation, prosecutors have been stripped of immunity because even though they were purporting to act in their public capacities, they were nevertheless advancing their own private interests. In such circumstances, courts have found that a grant of immunity would not advance the above-noted policy reasons that support the absolute immunity doctrine. *See, e.g., Beard v. Udall*, 648 F.2d 1264 (9th Cir.1981) (no absolute immunity where a county attorney who also maintained a private practice acting in his private capacity petitioned a state judge to modify a client's original divorce decree and then, in his public capacity, caused a baseless criminal charge to be filed against his client's former husband); *Brooks v. Fitch*, 534 F.Supp. 129, 132–36 (D.N.J.1981) (no absolute immunity if part-time prosecutor carried out retaliation related to his private practice through his access to prosecutor's office).

Here, defendant Whitman had no private interest to further. She was a full-time City employee. Although the prevailing practice in her office called on her to represent the private interests of Commission complainants,[2] *see* text, *supra; see also Maloff v. City Commission on Human Rights*, 46 N.Y.2d 908, 414 N.Y.S.2d 901, 387 N.E.2d 1217 (1979); defendant Whitman's Reply Memorandum at nn. 1 & 2, such representation was in furtherance of the law enforcement scheme designed to combat sex harassment and discrimination.[3] To deprive a Commission attorney of her absolute immunity under such circumstances would undoubtedly create in that attorney's mind the same apprehension about zealously prosecuting a claim that the absolute immunity doctrine seeks to dispel. Moreover, it would make the position of Commission attorney so fraught with personal risk that we think it likely many lawyers would be deterred from this form of public service.

■ Plaintiff also contends that even if Whitman possessed absolute immunity in the early stages of this action, she lost it when her potential conflict of interest ripened into an actual conflict, *i.e.*, when she learned of Alvarez's perjury. At that point, plaintiff contends, Whitman chose to act on behalf of Alvarez and not the Commission, first by arguing against allowing the record on appeal to be supplemented and then by arguing in favor of upholding the original decision finding Rudow liable. By so arguing, plaintiff contends, Whitman acted beyond the scope of her authority, jurisdiction and duties as a prosecutor and, therefore, should lose her absolute immunity. Again we disagree. At worst, Whitman made a serious error of judgment. Immunity, however, must protect not only correct decisions but erroneous ones as well if it is to serve its intended purpose. As the Second Circuit recently observed: "The immunity attaches to [a prosecutor's] function, not to the manner in which he performed it." *Barrett v. United States, supra*, at 573. We note that a prosecutor cannot make these judgments with impunity; professional or even criminal sanctions can be imposed. But a government attorney can make these difficult decisions free from the fear of being harassed by civil law suits. That some civil suits with merit will be dismissed along with baseless suits is an unavoidable cost of the absolute immunity doctrine.

2. *The Federal Claims: Whitman's Authority on Appeal*

■ Plaintiff contends that inasmuch as defendant Whitman was not authorized to

---

**2.** A complainant may also have chosen to retain her own counsel. *See, e.g., Burlington Industries, Inc. v. New York City Human Rights Commission*, 58 N.Y.2d 983, 460 N.Y.S.2d 920, 447 N.E.2d 1281 (1983); *Silverman v. City of New York Commission on Human Rights*, 84 A.D.2d 504, 443 N.Y.S.2d 155 (1981), *rev'd in part*, 56 N.Y.2d 608, 450 N.Y.S.2d 480, 435 N.E.2d 1095 (1982).

**3.** We note that one view of Whitman's actions is that they were in the best interests of the Commission. Arguably, Whitman's actions aimed at preserving the Commission's reputation for the swift, just and accurate processing of a sex discrimination complaint. Whitman's consistent position throughout the litigation has been that the ALJ's initial decision was substantively correct despite the perjured testimony.

prosecute Alvarez's claims beyond the state Supreme Court level, in prosecuting the appeal she exceeded the scope of her authority and, therefore, is not entitled to absolute immunity.

We reject this argument because we think it would raise bureaucratic form over substance. Plaintiff was at all times employed by the City. She was an attorney for the Commission on Human Rights, a City agency. Commission attorneys are legally empowered to represent the Commission in the state's appeals courts and apparently have done so on some occasions. Here, however, Whitman failed to obtain from the City's attorney, i.e., the Corporation Counsel, the appropriate designation to handle the appeal. Whitman concedes that she erred in failing to obtain the proper permission, but claims she was laboring under the mistaken impression that an official designation was unnecessary. No one here has questioned this stated reason for Whitman's failing to procure the designation. In any event, after the Appellate Division rendered its ruling, the Corporation Counsel, by his chief assistant, in effect ratified her action by allowing her to handle the appeal in the state's highest court, the Court of Appeals. Although the Chief Assistant Corporation Counsel now claims that he would not have allowed Whitman to handle the case at any appellate level had he been properly alerted beforehand, see Affidavit of Leonard Koerner at ¶ 8, at no time during the prosecution of this claim did the City try to dissociate itself from Whitman's representation. And indeed, as Whitman points out, even now the City relies on the state court decision as res judicata.

While Whitman's failure to obtain the proper designation might subject her to sanctions from her employer, we fail to see why it should cause her to lose her immunity from outside civil prosecution. She was, as far as both Rudow and the City were concerned, the City prosecutor in the case against Rudow.

Further support for our holding is found in Lerwill v. Joslin, 712 F.2d 435 (10th Cir.1983) which presented a more extreme case than the instant one of a prosecutor allegedly acting beyond the scope of his authority. The defendant in Lerwill, a part-time City attorney who was authorized to file only criminal charges based on City misdemeanor ordinances, was held absolutely immune from civil liability even though he presented a criminal complaint charging plaintiffs with violation of state felony statutes. He also successfully urged a Justice of the Peace to issue an arrest warrant for plaintiffs, set bail, and not allow plaintiffs, who ultimately spent 19 hours in jail, to satisfy the bail conditions with a personal check. Although the Lerwill case is factually distinguishable from the one sub judice, we find its reasoning applicable here.

> [A] prosecutor must decide whether he is authorized before initiating proceedings before a court, and he may hesitate to do so in some cases within his authority if he fears liability the moment he makes a mistake. ... [I]n determining whether a prosecutor has lost his absolute immunity ... we must interpret his authority broadly.

Lerwill, 712 F.2d at 439.

### 3. The State Claim

We find Whitman to be absolutely immune from liability on the state claim for the same reasons we find her to be absolutely immune from the federal claims. We note that the state doctrine of absolute immunity is substantially similar to the federal doctrine with respect to the type of conduct it immunizes, see, e.g., Tango ex rel. Tango v. Tulevech, 61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983); Santangelo v. State, 101 A.D.2d 20, 474 N.Y.S.2d 995 (1984), and is even broader than the federal doctrine with respect to whom it protects. Santangelo, supra 101 A.D.2d at 27 n. 4, 28, 474 N.Y.S.2d at 1000 n. 4, 1001.

### 4. Attorneys' Fees

We do not find plaintiff's claim to be "frivolous, unreasonable, or ground-

less." *Bonar on Behalf of Bonar v. Ambach,* 771 F.2d 14, 20 (2d Cir.1985). We decline to award defendant Whitman her attorneys' fees in defending this action.

## B. *The City Defendants' Motion for Summary Judgment*

The City defendants contend they are entitled to summary judgment on plaintiff's federal causes of action because plaintiff has not been deprived of any liberty or property interest and, in any case, he has received all the process he is due. They also argue that defendant Whitman's conduct in the Appellate Division cannot be imputed to them and that plaintiff's action is barred by *res judicata* or that the issue of whether he sexually harassed Alvarez is precluded by collateral estoppel. The City defendants further urge us to also dismiss the state cause of action, either for lack of jurisdiction or for failure to state a claim.

### 1. *The Federal Claims*

We turn first to the federal claims. With respect to these claims, we assume for the purposes here that the absolute immunity that we have found to cloak defendant Whitman does not *a fortiori* extend to the City defendants insofar as their liability is alleged to be on grounds other than *respondeat superior. See Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 681 (9th Cir.1984); *Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983); *Wagner v. Genesee County Bd. of Comm'rs,* 607 F.Supp. 1158, 1165–70 (E.D.Mich.1985). *But see Armstead v. Town of Harrison,* 579 F.Supp. 777, 782–83 (S.D.N.Y.1984); *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1104–08 (W.D. N.Y.1983) (dicta). *See also* Section II.B.2. *infra.*

In plaintiff's first federal count (Count 1 of the Complaint) he alleges that certain of Whitman's conduct which he imputes to the City defendants, violated his rights under the Fourteenth Amendment to the United States Constitution to not be deprived of property or liberty without due process of

law. The questioned conduct by Whitman included:

(a) failing to disclose to the Court her knowledge that Alvarez had testified falsely and submitted a forged document at the hearing before the Commission; (b) submitting papers in opposition to plaintiff's motion in the Appellate Division at a time when, on information and belief, Whitman knew that Alvarez had testified falsely and submitted a forged document; (c) communicating *ex parte* with the administrative law judge who had conducted the Commission's hearing, in violation of an express provision of the Commission's Rules of Practice which prohibit such *ex parte* communications; and (d) failing to inform the Commission itself that its proceedings had been tainted by perjury and false evidence.

Complaint at ¶ 25. Plaintiff's second federal cause of action (Count 3 of the Complaint) once again alleges a violation of plaintiff's due process rights, this time based on the following conduct by Whitman:

proferring as evidence at the Commission's hearing: (a) Alvarez's false testimony concerning her purported consultation with and treatment by Dr. Yoo; and (b) the forged medical note purportedly related to such consultation and treatment.

Complaint ¶ 36.

The City defendants attack the federal claims on several grounds, some involving constitutional questions. Mindful that we should "not pass upon a constitutional question ...'if there is also present some other ground upon which the case may be disposed of," *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), we will consider first the City defendants' claim that either the instant action should be barred as *res judicata* or that plaintiff should be collaterally estopped from litigating the issue of whether he sexually harassed Alvarez. We will then consider their argument that Whitman's conduct cannot be imputed to the

City. However, because we find neither argument persuasive, it will be necessary for us to consider the City defendants' contention that regardless of their own conduct, they have not violated a constitutionally protected liberty or property interest of plaintiff. Although that question is a close and troubling one, we agree with the City defendants that the reasoning of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) compels a finding in their favor.

### a. *Res Judicata and Collateral Estoppel*

The doctrine of *res judicata* provides that a final judgment on the merits of a cause of action by a court of competent jurisdiction bars further litigation of that cause of action by the parties to the original case or their privies. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). We must "give the same preclusive effect to state court judgments that . . . would be given in the courts of the state from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *see also Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (actions pursuant to section 1983 are subject to the above rule). Under New York law, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158, 1159 (1981).

The City defendants argue that the original commission decision finding Rudow liable was never vacated and therefore plaintiff's instant action should be barred as *res judicata*. Although we find that the original order was never vacated, we nevertheless hold that a combination of factors, including the uncontroverted tainted nature of the Commission decision and the unavailability of the remedies plaintiff now seeks at the Commission proceeding, prevent the Commission proceeding from having any *res judicata* effect.

We turn first to whether the original order finding Rudow liable for sexual harassment was ever vacated. If it was, then clearly it would have no *res judicata* effect. Plaintiff points to the New York Supreme Court opinion in Alvarez's Article 78 proceeding, in which Justice Saxe denied Alvarez's request that the Commission be prohibited from changing its order finding Rudow liable, as vacating the Commission finding. And indeed, Justice Saxe, after disparaging the reliability of the Commission's determination,[4] "directed . . . the Commission [to] proceed in this matter with the institution of a new hearing." Exh. H (at page 10) to Friedman Aff. Before that new hearing took place, however, Rudow and Alvarez entered into a stipulation—which was "So Ordered" by Justice Saxe—jointly requesting "that the Commission conduct no further proceedings on the Alvarez complaint." Exh. I (at page 3) to Friedman Aff. The stipulation continued: "[T]he Commission's Decision and Order shall continue to have such force and effect under applicable law as it had prior to the execution of this stipulation." *Id.* The key question, of course, is what effect the Commission's Decision and Order had prior to the stipulation (but after Justice Saxe's

---

**4.** Justice Saxe wrote:

The Commission's commitment to the eradication of sexual harassment and similar discrimination can be effective only if the integrity of its proceedings is free from doubt. That is not the situation as it stands now: a complaining witness has lied to the Commission at its hearing and submitted into evidence a forged document; the hearing officer who wrote the Commission's order and the then General Counsel of the Commission, Ms. Whitman, discussed the aspects of the perjury and forgery *ex parte* before Ms. Whitman submitted her response to Mr. Rudow's motion to supplement the record in the Appellate Division. No mention was made of these new matters, at that time, to either the Chair of the Commission, Ms. Maxwell or the Corporation Counsel's office. The only way in which this cloud over the NYCCHR's proceedings in this case can be removed is by a fresh exploration of the charges previously made.

opinion). While plaintiff contends that Justice Saxe's opinion actually vacated the order, the City defendants argue that his opinion was limited to the question of whether Alvarez could block the Commission from vacating its prior order and that any directions beyond that were dicta.

As a technical matter, we believe the City defendants have the better argument. By the nature of the proceeding, the issue before Justice Saxe was a limited one. Moreover, other language in the stipulation indicates that each of the parties believed that the Commission determination was still in effect. Specifically, the stipulation reads:

> 6. The Commission shall conduct no further proceedings on the Alvarez complaint, except that it may do so, at its discretion, only in the following circumstances:
>
> . . . . .
>
> (b) if the Commission's Decision and Order on the Alvarez complaint is vacated or modified by a court of law.

*Id.* at 3–4. Such language, which contemplates the possibility of the order being vacated in the future, assumes that it has not yet been so vacated.

Despite this argument, however, there lie reasons mandating against the invocation of *res judicata.* Perhaps most basic is the hopelessly tainted nature of the proceedings in which Rudow was found liable. Simply put, in light of the history of this case, including efforts by the City defendants themselves to disavow the original findings of the Commission, the City cannot rely on the prior Commission decision to bar the instant action. The fact that the ultimate reason that the Commission's order was not vacated was because Rudow and Alvarez stipulated to no further proceedings results in a circumstance in which no party to this litigation can point to any conclusive findings in a prior proceeding.

There is another independent reason why *res judicata* is not properly invoked here. In the instant action, Rudow is seeking monetary damages for violation of his constitutional rights. Inasmuch as the Com-

mission has no jurisdiction to hear such claims, *see* New York City Administrative Code § B1–1.0, Rudow could not have asserted the instant cause of action earlier. Therefore, his section 1983 claim cannot be barred. *Cf. Davidson v. Capuano,* 792 F.2d 275, 276 (2d Cir.1986) ("Because Davidson could not properly have obtained in the state court Article 78 proceeding the damage relief he seeks here [in a section 1983 action], we hold that his present action is not barred by res judicata.").

■ With respect to the City defendants' argument that plaintiff should be collaterally estopped from raising the issue of whether he sexually harassed Alvarez, we are likewise unpersuaded. Once again, the City defendants' position in Alvarez's Article 78 action belies any claim they now make that Rudow has had a full and fair hearing on the sexual harassment claim against him. Moreover, notwithstanding the contention of the City defendants that the state courts which affirmed the Rudow appeals had before them evidence that Alvarez may have committed perjury and forgery, not one of those courts knew that Alvarez had acknowledged her own wrongdoing. Whether dicta or not, we think justice Saxe was on the mark in observing that "the integrity of the [Commission's] proceedings [in the case against Rudow], is [not] free from doubt." Exh. H (at page 10) to Friedman Aff.

### b. *Policy of the City Defendants*

To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) that the conduct complained of was committed by a person acting under color of state law; and 2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). We discuss the second branch, which raises a constitutional question, in the section that follows. With respect to the first branch, the City defendants contend that plaintiff has failed to

establish that Whitman's conduct represented a policy of the City defendants. Without such a showing, the City defendants cannot be held liable for Whitman's conduct. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). For his part, plaintiff argues that Whitman's conduct indeed represented a policy of the City defendants because Whitman was a final decisionmaker for the City defendants or, alternatively, because the City defendants ratified Whitman's conduct when they failed to act promptly in response to those letters of Rudow's counsel that were critical of Whitman's conduct. We believe more discovery would be required to determine whether, under either of plaintiff's theories, Whitman's conduct could be considered the City defendants' policy. However, because we find in the next section of this Opinion that plaintiff's federal claims against the City defendants must be dismissed for reasons independent of whether Whitman's actions can be considered policy, such discovery need not be conducted.

With regard to plaintiff's argument that Whitman's conduct is *per se* attributable to the City defendants because she made policy, we turn first to the recently decided Supreme Court case of *Pembaur v. City of Cincinnati,* — U.S. —, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). There, the Court reaffirmed that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." — U.S. —, 106 S.Ct. at 1297 (quoting *Monell, supra,* 436 U.S. at 691, 98 S.Ct. at 2036. Thus, we need determine whether Whitman's handling of the Alvarez matter, both before the Commission and throughout the judicial appeal, was tantamount to "official municipal policy."

*Pembaur* establishes that "policy" need not be in the form of written standards and regulations. Indeed "policy" can consist of

"a single decision to take unlawful action made by municipal policy makers." — U.S. —, 106 S.Ct. at 1300. The "policy" in *Pembaur* was a decision by a county prosecutor that the county's deputy sheriffs should break down a door in order to execute certain writs. A plurality of the Court,[5] noting "that not every decision by municipal officers automatically subjects the municipality to § 1983 liability," held "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." — U.S. —, 106 S.Ct. at 1300. *See also Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 45 (2d Cir.1983) ("Where an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy."). The Court then looked to the relevant state law in determining that "the County Prosecutor could establish county policy under appropriate circumstances." — U.S. —, 106 S.Ct. at 1308.

In the instant case, it is not clear from the undisputed facts whether Whitman could satisfy the *Pembaur* standard such that she would be considered a policymaker. Although, technically, she was at all times subordinate to the Corporation Counsel, *see* the Charter of the City of New York, § 394, the actual scope of her decisionmaking authority is not certain from the record before us. In this regard, we observe that for a considerable period of time throughout the Alvarez litigation, Whitman served as Acting General Counsel and, then, as General Counsel to the Commission.

Plaintiff's alternative argument for holding the City defendants liable for Whitman's conduct is rooted in the inaction tak-

5. The Court's opinion was a majority one except for section II.B., which contains the cited language. This section represented the plurality of four justices. However, a fifth justice, Justice Stevens, who concurred in the judgment, thought that the limitations on municipal liability cited by us in text were too restrictive. Thus, a majority of the Court can be said to agree that if the cited standard is met, then municipal liability should attach.

en by the City defendants after they received two letters from Rudow's counsel. Exh. 29 to Bazel Aff. Plaintiff contends that "the City Defendants were put on notice of Whitman's conduct on numerous separate occasions, and took absolutely no steps to remedy this problem until public pressure came to bear." Plaintiff's Memorandum in Opposition to the City Defendants' Motion at 43.

We think that in this argument there exist two separate bases which if proven, would justify holding the City defendants liable for Whitman's conduct (assuming such conduct is actionable). The first basis would be the principle that "[m]unicipal liability under section 1983 may be predicated on municipal supervisors' knowing acquiescence in the unconstitutional behavior of their subordinates." *Villante v. Dep't of Corrections of the City of New York,* 786 F.2d 516, 519 (2d Cir.1986). The second would be that the City defendants had either a policy of dealing with conflicts the way Whitman did here or a policy that put Whitman in such a position that her actions here were reasonable under the circumstances. Suffice it to say that in light of the notice to the City defendants and their inaction for more than half a year, we think plaintiff has stated sufficient cause to warrant denial of dismissal without prejudice to renewal after completion of discovery. However, because we believe plaintiff's federal claims should be dismissed on the independent ground discussed below, such discovery need not be conducted.

### c. *Existence of a Constitutionally Protected Right*

In addition to proving that the conduct complained of was committed by a person acting under color of state law, a successful plaintiff in a section 1983 action must prove that this conduct deprived him of rights, privileges and immunities secured by the Constitution or laws of the United States. *Parratt, supra,* 451 U.S. at 535, 101 S.Ct. at 1912.

In this regard, plaintiff here claims that he has been denied his right to "due process" as guaranteed by the Fourteenth Amendment to the United States Constitution. That right, in turn, is to not be deprived of life, liberty or property without due process of law. Accordingly, plaintiff must first demonstrate that he has been deprived of either liberty or property. This he has not done and cannot do.

 To make out his due process claim, plaintiff must do more than show that he has been in some way wronged by the City defendants. Otherwise the fourteenth amendment would become the "font of tort law" it was not intended to be. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The defendants' culpable conduct must work to deprive the plaintiff of either a property interest, defined as an interest in which a person possesses a legitimate claim of entitlement, *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), or a liberty interest, defined as the right of an individual to engage in the common occupations of life and to enjoy privileges recognized as essential to the orderly pursuit of happiness. *Id.* at 572, 92 S.Ct. at 2706. The injuries of which plaintiff complains do not qualify as deprivations of either property or liberty interests as those interests have been defined in the case law. Plaintiff alleges defendants:

> have directly and proximately caused a deprivation of plaintiff's rights and injury to plaintiff. Such injury includes, but is not limited to: physical illness; emotional distress; humiliation; mental pain and suffering; medical expenses; attorneys' fees and other expenses incurred as a result of the proceedings in the Appellate Division; loss of employment; lost earnings; harm to plaintiff's reputation and his good name; and violation of plaintiff's civil rights.

Complaint at ¶ 29. *See also id.* at ¶¶ 32 & 40.

While we in no way mean to denigrate the significance of plaintiff's alleged inju-

ries and render no opinion as to whether plaintiff has other state law avenues of redress, the injuries of which plaintiff complains do not not rise to the level of constitutional deprivations. Rather, they are collateral consequences that flow from the fact that the plaintiff was found guilty of sexual harassment. Admittedly, being labeled as one who sexually harasses can work major harm to an individual's reputation. And undoubtedly such reputational damage alone could lead to the loss of a job, emotional distress, and other injuries alleged here. Nevertheless, by itself this reputational harm, or stigma, is not a deprivation of liberty or property.

In the leading case of *Paul v. Davis, supra,* the Supreme Court held that the plaintiff was not deprived of a liberty or property interest when he was incorrectly labeled as an active shoplifter in a flyer sent to local stores by police agents. The Court wrote:

> While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

424 U.S. at 701, 96 S.Ct. at 1160.

We recognize that here, unlike *Paul,* plaintiff actually lost his job as a result of being stigmatized. We believe, however, his loss is not a deprivation by the state, but rather a collateral consequence of plaintiff's stigmatization. Although the issue is not beyond doubt and at least one Court has disagreed with such a reading of *Paul, see Marrero v. City of Hialeah,* 625 F.2d 499, 515 (5th Cir.1980) (dictum), *cert. denied sub nom Rashkind v. Marrero,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), we believe that to show a constitutional deprivation plaintiff would have to demonstrate greater affirmative action by the City defendants, such as firing plaintiff themselves (not relevant here) or changing plaintiff's status such that he would become unemployable. *See Paul, supra,* 424 U.S. at 709–10, 96 S.Ct. at 1164–65 (citing *Roth, supra* ); *cf. Becker v. Russek,* 518 F.Supp. 1040 (W.D.Va.1981) (held that plaintiff chiropractor did not state a section 1983 claim against defendant state investigator where defendant allegedly defamed plaintiff to plaintiff's patients leading to an actual loss of patients and therefore, income by plaintiff); *Poirier v. Hodges,* 445 F.Supp. 838, 842–44 (M.D.Fla.1978) (held no section 1983 action lies even though plaintiff dealer in hearing aids alleged that defamation by defendants caused him to lose buyers and made him unable to assign purchase contracts). *Cf. Baden v. Koch,* 799 F.2d 825, 829–31 (2d Cir.1986) (loss of public employment); *Waltentas v. Lipper,* 636 F.Supp. 331, 336–38 (S.D.N.Y.1986) (loss of public development opportunity).

Arguably, this case is distinguishable from *Paul* in that here the stigma in question is such that it would put an employer on notice that he has in his employ or as an applicant for employment a person who in the past has undertaken a course of conduct for which an employer could be held derivatively liable. *See, e.g., Meritor Savings Bank v. Vinson,* —— U.S. ——, 106 S.Ct. 2399, 2407, 2408, 91 L.Ed.2d 49 (U.S. June 19, 1986); *see also id.* (Marshall, J., concurring), 106 S.Ct. at 2411. Thus, plaintiff might argue, the employer of a person adjudged guilty of sexual harassment would be more likely to discharge an employee than an employer of a person labeled as an active shoplifter. Nevertheless, when measured against the cases cited by *Paul,* we think the stigma here does not amount to a change in plaintiff's status such that a property or liberty interest is implicated. *See, e.g., Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (holding state practice of "posting", *i.e.,* forbidding sale of liquor to persons listed as excessive drinkers, did implicate property or liberty interest), *cited in Paul,* 424 U.S. at 707, 96 S.Ct. at 1163. While the nexus between the stigma here and plaintiff's security as an employee may

be closer than in *Paul,* it is not different in kind. Indeed the labeling of a person as a shoplifter may be viewed as the more severe handicap to employment in that the shoplifter is branded as a criminal and as one who is dishonest. And while an employer may not necessarily be derivatively liable for an employee's shoplifting, he may be derivatively liable for other acts of dishonesty and, in addition, may personally suffer from yet other acts of dishonesty, such as embezzlement.

Plaintiff also argues that the "predicate" for this section 1983 action is not the injury to his reputation, but rather "the knowing use of perjured testimony and forged evidence." Plaintiff's Memorandum in Opposition to the Motion of the City defendants at 37. We think this inappropriately shifts the focus of inquiry from plaintiff's rights to the City defendants' alleged wrongs. Assuming arguendo that the "knowing use of perjured testimony and forged evidence" violates due process, as set out above, such conduct would be actionable under section 1983 only if it deprives plaintiff of a property or liberty interest. Plaintiff tries to evade this problem by urging that not only does the conduct cited above deny him due process, but also it deprives him of a liberty interest in being free from this type of conduct. This argument strikes us as impermissible bootstrapping. It would enable plaintiff to escape the section 1983 requirement that he be deprived of a liberty or property interest by allowing him to substitute in their place the alleged due process violation itself.

The cases cited by plaintiff in support of his position are inapposite. *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Briscoe v. LaHue,* 460 U.S. 325, 326 n. 1, 103 S.Ct. 1108, 1111 n. 1, 75 L.Ed.2d 96 (1983); and *Anthony v. Baker,* 767 F.2d 657, 662 (10th Cir.1985), each involve criminal prosecution where plaintiff's knowing use of perjured

testimony and forged evidence led to criminal convictions, an obvious deprivation of liberty not found here. *Morrison v. LeFevre,* 592 F.Supp. 1052, 1073 (S.D.N.Y. 1984) involved deprivation of a prisoner's liberty when he was placed in isolated confinement.[6]

A final point should be made. Our discussion above assumes that the City defendants' culpable conduct, if any, relates back to the original Commission proceedings in which Rudow was found liable for sexually harassing Alvarez. We have assumed, in other words, that the City defendants are responsible for Rudow having been found liable. We have made this assumption because Count 3 of the complaint alleges that Whitman "procure[d] [the] determination by the Commission on the basis of perjury and forgery," and that she proferred the allegedly tainted evidence either "intentionally, recklessly, or with deliberate indifference to [its] truth." Complaint at ¶ 37. Rudow concedes he has not and could not offer any evidence supporting these allegations, but claims he is entitled to discovery in an effort to substantiate them. Plaintiff's Memorandum in Opposition to the City Defendants' Motion at 43 n.*. Because we agree that Rudow would be entitled to such discovery, we did not dismiss Count 3 from our consideration of the City defendants' motion. Nevertheless, we feel compelled to comment that no evidence has yet been adduced to support the inference that Whitman knew or should have known of the perjury at the time the evidence was presented. And with Count 3 removed from the complaint, our granting of summary judgment on the remaining federal claim would be a far less troublesome decision.

We note that Whitman had little to gain and a great deal to lose by presenting the tainted evidence. As evidence-in-chief the doctor's note was not of great significance

---

**6.** We also find *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) inapposite because the State Commission that was found to deprive plaintiff of a liberty interest there was empowered to make determinations

as to whether there was probable cause to believe persons had violated criminal laws. Moreover, the scope of *Jenkins* seems to have been limited by *Paul, supra,* 424 U.S. at 706 n. 4, 96 S.Ct. at 1163 n. 4.

in light of the direct testimony of Alvarez and two other women who claimed they were sexually harassed by Rudow. Supporting such a conclusion is the fact that the ALJ, when informed the note was a forgery, said that had he known that fact at the hearing, it would not have altered his findings on the merits. In addition, the note was considered of such limited import that apparently neither Rudow nor Litton investigated its authenticity at the hearing level. If, on the other hand, the note were shown to be a forgery—a showing that would not have been difficult to make—this circumstance could have had the potentially devastating effect of shattering the complainant's credibility. Moreover, by knowingly introducing tainted evidence, Whitman would have exposed herself to professional and criminal sanctions.

Were Count 3 to be dismissed from the complaint, the City defendants' motions would be less troublesome because then the alleged harm to Rudow would be limited to such an extent that it clearly would not amount to a deprivation of liberty or property. Without Count 3, the complaint alleges that the City defendants acted culpably only after December 1984, when Rudow moved to supplement the appellate record, knowing the evidence was tainted, and Whitman opposed the motion. Under such circumstances, the worst that can be said of the City defendants is that they wrongfully tried to perpetuate a tainted judgment, not that they wrongfully procured a tainted judgment.

We think this distinction is significant. The greatest harm to Rudow came from being adjudged guilty of sexually harassing Alvarez. It appears that the stroke he suffered and the loss of his job came shortly after the Commission's December 31, 1982 decision and well before December 1984. *See* Rudow Aff. at ¶¶ 5–6. Such major injuries simply can not be blamed on the City defendants if their culpable conduct is limited to the perpetuation of the tainted judgment. These injuries flow from the stigma of being found guilty of sexual harassment, and without Count 3, plaintiff does not allege that the City defendants caused the stigma.

### 2. The State Claim

Having found that plaintiff's claims under section 1983 must be dismissed, we turn now to his state cause of action (Count 2 of the Complaint), which asserts a claim under Section 487 of the Judiciary Law of the State of New York.

The City defendants contend that this claim should be dismissed for lack of pendent jurisdiction, the federal claims to which it would be pendent having been dismissed. We must confess this argument puzzles us inasmuch as the complaint avers that subject matter jurisdiction is predicated not only on the existence of a federal question, but also on diversity of citizenship pursuant to 28 U.S.C. § 1332. *See* Complaint at ¶ 6. Since the complaint on its face alleges sufficient diversity to support a finding of subject matter jurisdiction [7] and since the City defendants do not controvert the jurisdictional facts alleged, we move on to consider the motion to dismiss on its merits.

Judiciary Law § 487, provides, in pertinent part:

§ 487. Misconduct by attorneys

An attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y.Jud.Law § 487 (McKinney 1983).

The City defendants contend that plaintiff's actions under Section 487 should be

---

7. Plaintiff is a citizen of Pennsylvania, Complaint at ¶ 1, each of the three defendants is a citizen of New York, Complaint at ¶¶ 2–4, and the amount in controversy is greater than $10,000, Complaint at ¶ 6. "[F]ederal courts generally have held that municipal entities such as cities and counties, are to be considered citizens for diversity purposes." 4 Wright & Miller, *Fed. Prac. and Proc.* § 1110 at 437 (1969).

dismissed for either or both of two reasons: 1) Section 487 is intended to reach only Whitman's conduct and not that of the City defendants, or 2) one of the City defendants, the Commission on Human Rights, was a party to a prior proceeding and therefore the City defendants are immune from prosecution by the common-law rule making parties to a judicial proceeding immune from subsequent civil liability for the use of perjured testimony. We disagree with both contentions.

■ With respect to the City defendants' first argument, although New York courts have held that section 487 is intended to reach only the conduct of attorneys, *see, e.g., Nones v. Security Title & Guaranty Co.*, 4 Misc.2d 1057, 162 N.Y.S.2d 761 (N.Y.Co.Sup.Ct.1956), we see no reason why the employer of an attorney who has engaged in the proscribed conduct cannot be held derivatively liable based on the doctrine of *respondeat superior*. Indeed in *Muka v. Williamson*, 53 A.D.2d 950, 385 N.Y.S.2d 639, 640 (1976), the court impliedly acknowledged that derivative liability was possible under section 487. There the Court held that law partners of an attorney who engaged in actionable conduct under the statute would not be liable because the attorney in question was not acting in his capacity as a law partner but rather as County attorney. The implication was that the partners would have been liable had the attorney been acting as a law partner. *Cf. Tedeschi v. Smith Barney, Harris Upham & Co.*, 548 F.Supp. 1172, 1175–76 (S.D.N.Y. 1982) (Weinfeld, J.) (dismissing on the merits that part of a claim made under section 487 for which defendant moved for dismissal, but not passing on any other part of the claim even though it would make attorney's employer derivatively liable).

Further in this regard, arguably those persons employed by the City defendants who supervised defendant Whitman and who themselves are attorneys could, under certain circumstances, be held directly liable to plaintiff under section 487. As the Second Circuit recently observed: "Nothing in [former New York Penal Law] § 273 [the predecessor to section 387] limits the action to one by a party against an attorney for another party in a case." *Barrett, supra,* at 576.

■ We find the City defendants' second argument equally unpersuasive. In the first place, since only the Human Rights Commission was a party to a previous suit, only it and not the City could be immunized under the common-law doctrine that parties to a judicial proceeding are immune from subsequent civil liability for the use of perjured testimony. Beyond this, however, we believe that in any case the common-law doctrine in question does not apply here. Plaintiff is suing the Commission and the City in their capacity as employer of defendant Whitman. In this capacity, the City defendants fall within the exception to the common-law doctrine that section 487 carves out. Simply put, we do not believe the Commission's procedure, by which it acts on behalf of a complainant and simultaneously appears as a party to the suit, should take the City defendants out of section 487 liability. To hold otherwise would allow Commission attorneys to violate section 487 with an impunity that we think was not intended and is not deserved.

Our preceding discussion notwithstanding, there remains a serious question as to whether section 487 was intended to make municipal employers liable for acts of malfeasance by attorneys in their employ, especially when those attorneys themselves are protected by absolute immunity. On the one hand, a section 487 cause of action would enable a plaintiff to be compensated for wrongs such as those alleged here. On the other hand, its (apparently mandatory) treble damages provision and criminal penalties make it a penal statute and policy considerations weigh against holding a municipality liable for punitive damages. "[A]n award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort.... Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unk-

nowing taxpayers." *Newport v. Fact Concerts,* 453 U.S. 247, 267, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981) (footnote omitted) (deciding that a municipality may not be held liable for punitive damages under 42 U.S.C. § 1983). In addition, arguably the absolute immunity Whitman enjoys should extend to her municipal employers. At least two district courts have so held with respect to actions brought pursuant to section 1983, each concluding that the reasons supporting the doctrine apply with equal force to municipalities as to individual prosecutors. *See Armstead, supra; Whelehan, supra. But see Ybarra, supra; Reed, supra; Wagner, supra.*

Having expressed our concern, we decline to rule on the matter at this time sua sponte. Neither side has briefed the issue.

## IV. CONCLUSION

For the reasons elaborated above, we grant defendant Whitman's motion to dismiss the complaint, but deny her motion for attorney's fees. We grant the City defendants' motion for summary judgment, but deny their motion for summary judgment on the plaintiff's state law cause of action without prejudice to renewal.

SO ORDERED.