Lynn LERWILL and Penny Lerwill, Plaintiffs-Appellees,

v.

Gary James JOSLIN, Defendant-Appellant.

No. 81–1708.

United States Court of Appeals, Tenth Circuit.

July 11, 1983.

**436**

Gary James Joslin, pro se.

Craig N. Snyder of Howard, Lewis & Petersen, Provo, Utah, for plaintiffs-appellees.

Before BARRETT, McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

The issue in this case is whether a city attorney, authorized under local law to file

only criminal charges based on violations of city ordinances, is absolutely immune from a section 1983 suit for damages arising out of his (a) initiation of a prosecution for violations of state laws he was not authorized to invoke, (b) procurement of an arrest warrant from a Justice of the Peace who did not follow required State procedure in issuing the warrant, and (c) advocacy of excessive bail before a magistrate.

I

Lynn and Penny Lerwill allegedly assaulted an animal control officer of Santaquin, Utah. Gary Joslin, a part-time city attorney for Santaquin, attempted to prosecute the assault. Mr. Joslin was authorized to file only criminal charges based on city misdemeanor ordinances. Nevertheless, he presented a criminal complaint to a Justice of the Peace ("Justice") charging the Lerwills with violations of state felony statutes. The Justice signed the complaint and, at Mr. Joslin's request, issued a warrant for the Lerwills' arrest. After the Lerwills were arrested, Mr. Joslin requested that bail be set at $1,000 for Mr. Lerwill and $500 for Mrs. Lerwill, and that they not be permitted to pay by personal check. After approximately nineteen hours in jail, the Lerwills bailed themselves out. They then brought this suit against Mr. Joslin under 42 U.S.C. § 1983 (Supp. V 1981). They claimed that he had deprived them of liberty without due process by causing them to be jailed since he was not authorized to file the criminal charges based on state law, and because the Justice failed to obtain a county attorney's permission, as required by state law, before issuing the arrest warrant.[1] They also alleged that Mr. Joslin

1. Although the Lerwills base their suit on alleged violations of their constitutional rights, it is not clear how those rights were violated. The Lerwills do not claim that their arrest violated the fourth amendment. Their theory apparently is that their night in jail was a deprivation of liberty that was without due process since Mr. Joslin acted beyond his authority in filing charges and the Justice did not follow the proper state procedure in failing to consult a county attorney before issuing the arrest warrant. The due process clause, standing alone, does not prohibit city attorneys from filing

criminal charges based on state law; nor does it require a Justice of the Peace to obtain a county attorney's permission before issuing an arrest warrant. Thus, the Lerwills were denied due process only if the existence of the Utah procedure somehow expanded their due process rights. Although state law can expand or contract constitutionally protected liberty and property interests, *see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), it is not clear that extraconstitutional state procedural safeguards can expand the due process to which one is entitled when

had violated their eighth amendment right to be free from excessive bail by his request that their bail be set as high as it was.

The trial court rejected Mr. Joslin's claim that as a public prosecutor he was absolutely immune from the Lerwills' suit. The court held that he had lost his immunity by acting beyond the scope of his authority. A jury found Mr. Joslin liable, and the trial court entered judgment against him for $14,485.10.

## II

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor is absolutely immune from a section 1983 suit for damages based on his "initiating a prosecution and . . . presenting the State's case."[2] *Id.* at 431, 96 S.Ct. at 995. The Court did not decide whether prosecutors are immune from such suits based on their nonprosecutorial investigative or administrative acts, and many courts since *Imbler* have held that there are limits to prosecutorial immunity for these activities. *See, e.g., Coleman v. Turpen,* 697 F.2d 1341 (10th Cir.1982). Mr. Joslin argues that he is absolutely immune from the Lerwills' suit under *Imbler.* The Lerwills argue that *Imbler* does not confer immunity on Mr. Joslin since he was not authorized to charge them with state law violations and since the Justice was not authorized to issue an arrest warrant without first consulting a county attorney.

## A

We begin our analysis by noting that Mr. Joslin's acts against the Lerwills were part of his "initiation and presenta-

tion" of a prosecution rather than nonprosecutorial acts for which prosecutors generally are not absolutely immune from section 1983 suits for damages. His filing a criminal complaint against the Lerwills was clearly an initiation of a prosecution. As for the arrest, both before and after *Imbler,* a prosecutor's absolute immunity has extended to his procurement of an arrest warrant. *See, e.g., Martinez v. Chavez,* 574 F.2d 1043 (10th Cir.1978); *Smart v. Jones,* 530 F.2d 64 (5th Cir.), *cert. denied,* 429 U.S. 887, 97 S.Ct. 240, 50 L.Ed.2d 168 (1976); *Gregoire v. Biddle,* 177 F.2d 579 (2d Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); *Yaselli v. Goff,* 12 F.2d 396 (2d Cir.1926), *aff'd,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927). These cases are consistent with *Imbler.* In seeking a warrant for the Lerwills' arrest, Mr. Joslin was acting as an advocate for the State before a neutral magistrate. His presentation of his arguments to a Justice of the Peace thus differs fundamentally from a prosecutor's participating in an illegal search, *see Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980), *cert. denied sub nom. Rashkind v. Marrero,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), issuing a libelous press release, *id.,* participating in the illegal sale of seized property, *see Coleman,* 697 F.2d at 1341, or ordering a warrantless arrest. None of these examples involves a prosecutor's acts as an advocate before a neutral magistrate. To be sure, a prosecutor typically seeks an arrest warrant in an *ex parte* proceeding, in which there is no counterargument by opposing counsel to lessen the danger of prosecutorial misconduct. Nevertheless, we think that

---

deprived of liberty or property, *see Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Alternatively, the Lerwills might be claiming that the Utah law regarding Mr. Joslin's and the Justice's authority created a liberty interest of which they were deprived without due process. Because of our ruling on Mr. Joslin's immunity, we need not decide this issue.

**2.** Since *Imbler,* the Court has expanded the protection of qualified immunity by eliminating its benevolent intent requirement. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982). Thus, § 1983 defendants who have qualified immunity are now less likely to be liable, and, if not liable, are less likely to have to go to trial since the objective qualified immunity standard lends itself to resolution on the pleadings. This decreases the disruption to state criminal law enforcement that would result from granting a prosecutor only qualified immunity. The Supreme Court has not yet suggested, however, that this dramatic change in *Imbler*'s frame of reference affects *Imbler*'s reach.

a prosecutor's seeking an arrest warrant is too integral a part of his decision to file charges to fall outside the scope of *Imbler.* The purpose of obtaining an arrest warrant is to ensure that the defendant is available for trial and, if found guilty, for punishment. Without the presence of the accused, the initiation of a prosecution would be futile. Thus, a prosecutor's seeking a warrant for the arrest of a defendant against whom he has filed charges is part of his "initiation of a prosecution" under *Imbler.* In addition, for purposes of immunity analysis, a prosecutor's advocacy of a given amount of bail is indistinguishable from his requesting an arrest warrant except that a bail proceeding is not generally *ex parte,* and is therefore less subject to abuse. We conclude that Mr. Joslin's filing charges, procuring an arrest warrant, and seeking a particular bail amount were part of his "initiation and presentation" of a prosecution within the meaning of *Imbler.*

## B

*Imbler* thus appears to render Mr. Joslin absolutely immune from the Lerwills' suit. However, the Lerwills argue, we should not take *Imbler* at its face value. Instead, they claim, a prosecutor initiating a prosecution and presenting the State's case is absolutely immune under *Imbler* only if state law authorizes him to prosecute violations of the particular statutes he invokes. Since Mr. Joslin, a city attorney, was not authorized to prosecute violations of state felony laws, they conclude that he was acting outside of his authority and therefore is not immune from liability for the constitutional rights he violated by doing so.[3] Of course, *Imbler* immunizes a prosecutor for filing charges that are beyond his authority in that they are unconstitutional. Moreover, since a

prosecutor's immunity is absolute, it applies no matter how obvious it is to the prosecutor that he is acting unconstitutionally and thus beyond his authority. It is not immediately apparent why he should lose that immunity simply because the boundaries he transgressed were prescribed by local law rather than the federal Constitution. In its best light, however, the Lerwills' argument suggests that constitutional issues are often murkier than issues involving a prosecutor's authority under local law. Thus, it is necessary to immunize prosecutors for obvious constitutional violations to avoid the disruption to state criminal law enforcement that would result from having to separate the obvious ones from the murky ones in federal court, as would be the case if prosecutors had only qualified immunity. But they argue that it does not follow that it is necessary to immunize prosecutors for acts that are obviously beyond the bounds of the authority vested in them by local law.

■ The Lerwills' argument analogizes prosecutorial immunity to judicial immunity. A judge is absolutely immune from a section 1983 suit for damages only for (a) judicial acts (b) for which the judge has at least a semblance of subject matter jurisdiction. *See Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). *Imbler* appears to grant prosecutors absolute immunity for prosecutorial functions without imposing a requirement analogous to the requirement for judicial immunity that the judge have had subject matter jurisdiction to make the decision on which the suit against him is based. The Lerwills suggest that this is incongruous since prosecutorial immunity should be at most no broader than the judicial immunity from which it is derived. Since this issue was not

---

**3.** The Lerwills also argue that Mr. Joslin acted beyond the scope of his authority in seeking an arrest warrant from the Justice since the Justice was not authorized to issue an arrest warrant without first consulting a county attorney. However, the Utah statute in force at the time did not preclude a city attorney's seeking an arrest warrant; it simply required a Justice to get a county attorney's permission before issuing one at a city attorney's request. *See* Utah

Code Ann. § 77–12–1 (1953) (amended 1980). Mr. Joslin's obtaining the warrant involved no act outside the scope of his authority except to the extent that it was part of his unauthorized filing of the charges. The same is true for Mr. Joslin's seeking a particular amount of bail. Thus, Mr. Joslin is immune for seeking the arrest warrant and bail if he is immune for filing the charges.

before the Court in *Imbler,* we think it would be incorrect to construe *Imbler* as foreclosing it. Accordingly, we assume *arguendo* that a prosecutor can lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority under local law. Since we find Mr. Joslin immune in either case, we need not decide whether there is in fact such a limit to the *Imbler* holding.

 Even if a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority, it does not follow that he does so immediately upon crossing the technical bounds of the power conferred on him by local law. Indeed, it has long been a fundamental tenet of immunity doctrine that when a judicial officer has absolute immunity from liability, his immunity does not become qualified simply because he acted in excess of his authority. In *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872), the Supreme Court held that while a judge is not absolutely immune for judicial acts taken in "the clear absence of all jurisdiction over the subject matter," he remains immune for such acts that were merely in "excess of [his] jurisdiction." *Id.* at 351–52, 20 L.Ed. 646. As the Court more recently explained in applying *Bradley* to a section 1983 suit,

> Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction ...," the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

*Stump v. Sparkman,* 435 U.S. at 356–57, 98 S.Ct. at 1104–05 (footnote and citation omitted) (1978). While *Bradley* dealt with judicial immunity, it has generally been found applicable to a prosecutor's quasi-judicial immunity as well. *See Butz v. Economou,* 438 U.S. 478, 509, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978); *Bauers v. Heisel,* 361 F.2d 581, 589–90 (3d Cir.1966) (en banc), *cert. denied,* 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967); *Gregoire v. Biddle,* 177 F.2d at 580. Unlike a judge, a prosecutor is not relied on by the judicial system to determine a court's jurisdiction. In addition, the jurisdictional issues facing a judge may often be significantly more complex than questions of prosecutorial authority that a prosecutor must resolve before acting. Nevertheless, a prosecutor must decide whether he is authorized before initiating proceedings before a court, and he may hesitate to do so in some cases within his authority if he fears liability the moment he makes a mistake. Moreover, the *Bradley* distinction, as applied to prosecutorial immunity, has built-in safeguards. So long as it applies only to prosecutorial functions—*i.e.* the initiation or presentation of proceedings before a magistrate, such as filing charges, seeking an arrest warrant, or advocating a particular level of bail, *see ante* at 437–438—the interposition of a magistrate between the prosecutor's decision and acts by the State against a defendant significantly reduces the danger of prosecutorial abuse. Thus, even if a prosecutor is not absolutely immune for prosecutorial acts for which he had no semblance of authority, a distinction similar to the *Bradley* distinction should immunize prosecutors in some cases. In determining whether a prosecutor has lost his absolute immunity by committing a prosecutorial act beyond the scope of his authority, we must interpret his authority broadly. *Stump,* 435 U.S. at 356, 98 S.Ct. at 1104.

 In the case *sub judice,* it is clear that Mr. Joslin was acting within his authority in one sense: he was authorized to file charges against the Lerwills under Santaquin City ordinances and to seek their arrests for the acts they allegedly committed.[4]

---

4. Mr. Joslin could arguably have prosecuted the Lerwills for violating the following sections of the Revised Ordinances of Santaquin City, Utah: § 204 (assault and battery), § 223 (dis-

He acted beyond his authority in that his complaint cited statutes of a unit of the state's government he was not empowered to represent. In some cases, filing charges based on the statutes of a different sovereign may be so clearly beyond the bounds of a prosecutor's authority that subjecting the prosecutor to liability—or to the uncertainty of only a qualified immunity—would not deter fearless decision-making by honest prosecutors. However, when the statute a prosecutor incorrectly invokes is a local statute that arguably applies to the defendant's alleged behavior, our conclusion is different for two reasons. First, it is a mistake that many honest prosecutors could make. The number of honest prosecutors who might be found liable for inadvertently citing the wrong statute or shrink from their duties for fear of being hauled into court if they did mandates that the prosecutors who do so maliciously be dealt with through remedies other than section 1983, such as state civil or criminal proceedings or a complaint to the state bar. *See Imbler,* 424 U.S. at 428–29, 96 S.Ct. at 994.[5] Second, when the prosecutor is authorized to prosecute the acts that occurred but he

simply cites the wrong statute in doing so, the marginal harm of the wrong citation will be checked in most cases, not only because of the necessity that the prosecutor act through a judge as discussed above, *see ante* at 439, but also because the defendant would have faced properly brought criminal charges anyway had the prosecutor invoked the correct statute or had the proper prosecutor invoked the cited statute. Accordingly, we hold that a prosecutor who initiates a prosecution under statutes he is not authorized to invoke is immune from a section 1983 suit for damages when two conditions are satisfied: (1) the prosecutor is arguably empowered to prosecute the alleged conduct under *some* statute, and (2) the statute he incorrectly invokes also arguably applies to the criminal defendant's alleged conduct.[6] *See also Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir.1979) (prosecutor's filing charges without jurisdiction "unquestionably fall[s] within the band of prosecutorial immunity"); *Bauers,* 361 F.2d at 591 (prosecutor immune from damages for filing charges in county court, which had no jurisdiction over juvenile defendant).[7]

---

turbing the peace), § 243 (interference with officer in discharge of duty), § 273 (trespass), and § 81 (interference with poundkeeper). *See* Defendant's Exhibit P. *See also ante* note 2.

5. The Ninth Circuit has held that a prosecutor who files charges beyond the scope of his authority is not immune from a § 1983 suit for damages based on the criminal charges. *Beard v. Udall,* 648 F.2d 1264 (9th Cir.1981) (per curiam). The prosecutor in *Beard* acted beyond his authority by filing baseless criminal charges when he had a conflict of interest. To the extent that *Beard* is inconsistent with our holding today, we decline to follow it. *Beard* conflates two ways in which a prosecutor may exceed his "authority." It relies on cases in which prosecutors were not immune for acts that were beyond the prosecutor's authority in that they were nonprosecutorial, yet the prosecutor in *Beard* had performed a quintessentially prosecutorial act—filing criminal charges—which the court concluded was beyond his authority because of a conflict of interest. The difference is that the latter falls within the literal scope of the *Imbler* holding while the former does not. *Beard* fails to address this difference; the opinion does not explain how to define the scope of a prosecutor's authority and makes no mention of the source of the bounda-

ries that the prosecutor transgressed. Furthermore, *Beard* does not consider the effect of *Bradley* and its progeny. Finally, to the extent to which *Beard* defines "authority" through resort to the technical niceties of local law defining the prosecutor's powers, it is inconsistent with the functional analysis that the Supreme Court has mandated for determining official immunity from § 1983 suits. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

6. We do not mean to imply that a prosecutor who files charges under a statute beyond his jurisdiction is not immune when these conditions are not satisfied. We simply hold that he is immune when they are satisfied.

7. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court eliminated the subjective component of qualified immunity, leaving only a "reasonableness" standard. Our opinion today suggests that a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no reasonable claim of authority. It does not follow, however, that this opinion simply grants a qualified immunity to prosecutors who act beyond their authority. The scope of a prosecu-

■ In this case Mr. Joslin could have prosecuted the Lerwills under Santaquin City ordinances for their alleged assault of the animal control officer. *See ante* note 4. He improperly relied on state statutes under which the Lerwills might also have been prosecuted. Thus, he was immune under *Imbler* from the Lerwills' suit. *See ante* note 3.

We recognize that Mr. Joslin, rather than mistakenly citing the wrong statute in prosecuting the Lerwills, might have intentionally or even maliciously done so in order to harm them. While the Lerwills' inability to sue him under section 1983 is unfortunate if this is true, it is a cost required by *Imbler* to be paid so that honest prosecutors do not shrink from fearless advocacy. As the Supreme Court stated in *Imbler,*

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

424 U.S. at 428, 96 S.Ct. at 994 (*quoting Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949) (Learned Hand, J.), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)).

The judgment of the district court is reversed with direction to dismiss the action.

tor's absolute immunity for prosecutorial acts beyond his authority necessarily depends on how far he exceeded his authority. The scope of a § 1983 defendant's qualified immunity, on the other hand, depends on how obviously he was violating the Constitution. The distinction between these two inquiries is obscured in the present case because the Lerwills base both their underlying constitutional claim and their argument of Mr. Joslin's lack of immunity on his having acted beyond his state-conferred authority. *See ante* note 1. However, when a prosecutor has a sufficiently reasonable claim of authority under state law to have absolute immunity, *see Bradley,* he is protected no matter how obvious it was that he was violating the Constitution. Conversely, if a prosecutor acted so unreasonably far beyond his authority as to lose his absolute immunity, there are two possibilities: he might have qualified immunity, which would protect him if he could not reasonably have known that he was violating the Constitution, or he might have no immunity at all. Thus, to grant a reasonably circumscribed absolute immunity differs from applying an objective qualified immunity.