Norman **RUDOW**, Plaintiff-Appellant

v.

The **CITY OF NEW YORK**, the City of New York Commission on Human Rights, and Lois Whitman, Defendants-Appellees.

No. 890, Docket 86–7833.

United States Court of Appeals, Second Circuit.

Argued March 12, 1987.

Decided July 2, 1987.

Gail S. Strassfeld, Boston, Mass. (Silverglate, Gertner, Fine, Good & Mizner, Boston, Mass., of counsel), for plaintiff-appellant.

Barry P. Schwartz, Office of the Corp. Counsel, City of New York, New York City (Peter L. Zimroth, Corp. Counsel of the City of New York, June A. Witterschein, Office of the Corp. Counsel, City of New York, New York City, of counsel), for defendants-appellees The City of New York and The City of New York Com'n on Human Rights.

Marvin E. Frankel, New York City (Scott D. Heller, Kramer, Levin, Nessen, Kamin & Frankel, New York City, of counsel), for defendant-appellee Lois Whitman.

Before TIMBERS, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

In this appeal from a judgment of the United States District Court for the Southern District of New York, Sand, J., we consider the boundaries of absolute prosecutorial immunity where a municipal attorney represents both her employer agency and the individual complainant before that agency. Because it appears that the dual representation created a conflict of interest in this case, we also consider whether the target of the agency prosecution, Norman Rudow, who alleges injury to a claimed

liberty interest in his status as an innocent person, may sustain an action under 42 U.S.C. § 1983 (1982). We conclude that the Human Rights Commission (HRC) prosecutor is absolutely immune from personal liability under federal and state law, and that Rudow's claims do not rise to the level of a constitutionally protected interest that would support an action against the City under section 1983.

## BACKGROUND

In an opinion reported at 642 F.Supp. 1456 (S.D.N.Y.1986), Judge Sand ordered entry of summary judgment in favor of the defendants after a full examination of the facts viewed in the light most favorable to the appellant, Rudow. Familiarity with the district court opinion is assumed, and we repeat here only those facts necessary for an understanding of the case on appeal.

In 1981, Brenda Alvarez, a clerical worker for Litton Office Product Centers, complained to the HRC that Rudow, who was then Litton's regional division president, had sexually harassed her on the . job. HRC staff attorney Lois Whitman was assigned to the case, and she assured Alvarez that the attorney-client privilege protected the confidentiality of their communications. Whitman prosecuted the complaint in a hearing before an administrative law judge. In a January 1983 decision, the HRC sustained the sexual harassment complaint and awarded Alvarez damages of $15,188.97. The New York Supreme Court confirmed the determination, *Rudow v. New York City Commission on Human Rights,* 123 Misc.2d 709, 474 N.Y.S.2d 1005 (1984), and Rudow appealed to the Appellate Division, which affirmed without opinion, 109 A.D.2d 1111, 487 N.Y.S.2d 453 (1st Dep't 1985). Leave to appeal to the New York Court of Appeals was denied. 66 N.Y.2d 605, 499 N.Y.S.2d 1025, 489 N.E.2d 1302 (1985). Rudow was subsequently fired by Litton and has suffered loss of job prestige and deteriorated health.

Throughout the administrative and judicial stages of the sexual harassment prosecution, Lois Whitman continued to represent both the HRC and Alvarez. It ap-

pears that, by failing to obtain prior HRC permission to participate in the case beyond the state Supreme Court stage, Whitman may have exceeded the specific jurisdictional authority delegated to her, although her supervisor later ratified her decision to remain in the case in the appellate stages.

While preparing his appeal to the Appellate Division, Rudow learned that Alvarez had lied to the ALJ about receiving medical care and had submitted a forged note, ostensibly signed by a physician, describing her nervous condition. Rudow moved to supplement the record on appeal with evidence of the false testimony. When confronted privately by Whitman, Alvarez admitted her fabrications. Whitman did not report this admission to the HRC or the court, but met *ex parte* with the ALJ who presided over the original hearing. He advised Whitman that knowledge of the perjury and forgery would not have altered his ultimate determination. Apparently satisfied that she had met her professional responsibility, Whitman continued to press Alvarez's case and opposed Rudow's motion before the Appellate Division to supplement the record. The Appellate Division granted Rudow's motion but refused to overturn the Supreme Court's ruling.

While continuing his court battle, Rudow also mounted a direct attack on the City, demanding a new HRC hearing and, when no relief appeared likely, filed this action. The *New York Post* published articles disclosing the tainted hearing, and shortly thereafter the City sought to vacate the HRC ruling in order to accept additional evidence. The City's Corporation Counsel wrote to Alvarez, severing any attorney-client relationship that Alvarez "may have had in the past" with Whitman.

Acting without the support of the HRC or Whitman, Alvarez sued unsuccessfully to prevent reopening of her sexual harassment case. Before the HRC could actually vacate its order, however, Rudow and Alvarez reached an agreement under which they jointly requested that the HRC take no further action on Alvarez's complaint and waived any rights they may have had to further agency proceedings on the mat-

ter. Rudow has continued this separate action, in which Alvarez is not a party.

Rudow claims that Whitman's failure to disclose Alvarez's perjury and forgery distorted the sexual harassment prosecution in a way that deprived him of his constitutional right to liberty without due process of law. He claims a protected liberty interest in his legal status as a person innocent of the unlawful employment practice of sexual harassment. Alternatively, Rudow claims that a protected liberty interest arises from the combination of his reputation interest with his interests in his legal status as an innocent person, in his employment opportunities and in being free of attorney deceit. He claims that his liberty interest in being free of attorney deceit springs from the New York attorney misconduct statute, N.Y.Jud.Law § 487 (McKinney 1983). Rudow also asserts a violation of section 487 as an independent cause of action against Whitman and the City.

The district court ruled that neither Rudow's section 1983 claim nor his pendent state claim of attorney misconduct could be maintained against Whitman because she was protected by the doctrine of absolute prosecutorial immunity. As to Rudow's section 1983 claim against the City, Judge Sand decided that even if Whitman's conduct was culpable and even if the conduct could be imputed to the City as Whitman's employer, Rudow had nevertheless failed to allege that he had been deprived of a constitutionally protected interest in liberty or property. The district court dismissed the federal and state claims against Whitman and the federal claim against the City, but held the City answerable for violation of the attorney misconduct statute. Thereafter, Rudow withdrew this latter claim, subject to reinstatement in the event that the district court's dismissal of the other claims is reversed on appeal.

## DISCUSSION

■ The first question, and the one that disposes of all claims against defendant Lois Whitman, is whether the doctrine of absolute immunity protects her from feder-

al and state liability despite allegations that she acted outside of her authority to prosecute Alvarez's administrative complaint against Rudow. Even accepting, as we must, in the posture of this appeal, Rudow's factual claims, we conclude that Whitman's conduct was at least colorably prosecutorial in nature and not clearly beyond her jurisdiction, and was, therefore, protected under the federal and state doctrines of absolute immunity.

In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that prosecutors are absolutely immune from section 1983 liability for prosecutorial activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 995. The same immunity was extended to agency attorneys conducting a trial and presenting evidence on the record to an administrative trier of fact. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Butz*, the Court found "no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court." *Id.* at 516, 98 S.Ct. at 2916.

The public interest in maintaining its prosecutors' freedom to exercise independent judgment without fear of personal civil liability is no less compelling in an agency hearing than in a court hearing. *Compare Imbler*, 424 U.S. at 423, 96 S.Ct. at 991, *with Butz*, 438 U.S. at 517, 98 S.Ct. at 2916. Moreover, the collateral safeguards against prosecutorial malfeasance are the same. *See Butz*, 438 U.S. at 515–17, 98 S.Ct. at 2915–16 (protections against false evidence include independent judicial review, cross-examination and reinterpretation of evidence by opposing counsel, analysis by impartial trier of fact).

■ Although the Supreme Court upheld absolute immunity for a prosecutor acting "within the scope of his duties," *Imbler*, 424 U.S. at 410, 96 S.Ct. at 985, it has not considered how far beyond the limits of his authority a prosecutor may stray before losing that immunity. We have. In *Barr v. Abrams*, 810 F.2d 358 (2d Cir.1987), we

ruled that a personal liability action could not be maintained against prosecutors in the New York Attorney General's office who had pressed criminal charges in violation of plaintiff's rights under the Fifth Amendment of the Constitution. We held that "unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process. Conversely, where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy." *Id.* at 361. *Butz* and *Barr* require that agency attorneys performing a prosecutorial function, as opposed to investigative or administrative functions, *see Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir. 1981), be held absolutely immune to section 1983 personal liability unless they acted in the clear absence of jurisdiction.

■ Both of the *Barr* criteria must be evident in the prosecutor's conduct before absolute immunity attaches: the conduct must be colorably prosecutorial in nature and it must not be undertaken in the clear absence of jurisdiction. Rudow has attacked both criteria, and we consider them in turn. We first note that if Whitman's conduct was the *kind* of conduct authorized of prosecutors, then the *degree* of her misconduct is of no concern to us. Her immunity would be absolute. *See Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *Lee v. Willins,* 617 F.2d 320, 322 (2d Cir.1980) (prosecutor absolutely immune to claims of suborning perjury and falsifying evidence), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *Yaselli v. Goff,* 12 F.2d 396, 404–05 (2d Cir.1926) (prosecutor absolutely immune to claim of wholly false prosecution), *aff'd mem.,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927); *Lerwill v. Joslin,* 712 F.2d 435, 440 n. 5 (10th Cir.1983) (distinguishing the scope of prosecutorial authority from the degree of the breach of that authority).

Whitman's conduct during all phases of the Alvarez proceeding was quintessentially prosecutorial in nature, despite any conflict that arose. Her dual representation of the HRC and Alvarez occurred in a single integrated action, and all of the conduct complained of centered around that action. *Cf. Harper v. Merckle,* 638 F.2d 848, 859 (5th Cir.) (absolute judicial immunity does not protect a judge whose conduct did not center around a case then pending, but rather around the domestic problems of the judge's friend), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). There is no claim that Whitman's relationship with Alvarez arose before the initiation of the HRC complaint, that Whitman ever practiced law privately, or that Whitman was privately retained by Alvarez, either for a fee or *pro bono.*

Dual representation characterizes the normal practice of the HRC. *See, e.g., Silverman v. City of New York,* 84 A.D.2d 504, 443 N.Y.S.2d 155 (1st Dep't 1981) (HRC attorney representing both HRC and individual complainant Sophie Oschak in sex discrimination case), *rev'd on other grounds,* 56 N.Y.2d 608, 450 N.Y.S.2d 480, 435 N.E.2d 1095 (1982). This practice comports with federal procedure in discrimination and wrongful employer conduct complaints. *See, e.g.,* 29 U.S.C. § 216(c) (1982) (Secretary of Labor authorized to sue on behalf of individual complainant; individual in such case barred from pursuing independent claim); *id.* § 626(c)(1) (same as to EEOC in age discrimination complaint); *E.E.O.C. v. Chrysler Corp.,* 546 F.Supp. 54, 60–61 (E.D.Mich.1982), *aff'd,* 733 F.2d 1183 (6th Cir.1984). Whitman's dual representation of the HRC and Alvarez does not alter the prosecutorial nature of her conduct.

The subsequent divergence of the interests of the HRC and Alvarez does not render Whitman's response nonprosecutorial. Without commenting on Whitman's efforts to resolve the conflict, we find her dilemma paradigmatic of the decisions faced by public prosecutors. The delicate balance that must be struck between the interests of the public and those of complainants in administrative or criminal proceedings is part of the reason for the absolute immunity doctrine. Fearless prosecution and the exercise of sound judgment

cannot prosper under the threat of personal liability for an incorrect decision.

Having concluded that Whitman's conduct was prosecutorial in nature, we need not tarry over Rudow's claim that Whitman was jurisdictionally disqualified from appearing in the New York appellate courts. Whitman's exercise of discretion in the conduct of the Alvarez matter may have carried her beyond the bureaucratic boundaries of her position as staff attorney and later as Acting General Counsel with the HRC. Nevertheless, her conduct remained within the general jurisdiction of the HRC and its staff. "[A] prosecutor must decide whether he is authorized before initiating proceedings before a court, and he may hesitate to do so ... if he fears liability.... [W]e must interpret his authority broadly." *Lerwill v. Joslin*, 712 F.2d at 439. Whitman's practice before the appellate courts was not undertaken in the clear absence of jurisdiction.

■ The same principles that render Whitman absolutely immune from personal liability under federal law also protect her under New York law. In New York, absolute immunity extends not only to the prosecutorial function, *Schanbarger v. Kellogg*, 35 A.D.2d 902, 315 N.Y.S.2d 1013 (1970), *appeal dismissed*, 29 N.Y.2d 649, 324 N.Y.S.2d 1033, 273 N.E.2d 321 (1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972), but to numerous public functions involving the exercise of discretion in a judicial or quasi-judicial nature. *Santangelo v. New York*, 101 A.D.2d 20, 474 N.Y.S.2d 995, 997 & n. 1 (4th Dep't 1984) (quoting with approval *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949) (it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation"), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)). Rudow's claim that New York's attorney misconduct statute, N.Y.Jud.Law § 487, applies to the prosecutorial acts of municipal attorneys is unpersuasive. Prosecutors are not merely attorneys, and it is not even remotely likely that the New York courts would hold prosecutors personally liable

for actions taken as prosecutors under a statute directed at attorneys generally. Whitman is absolutely immune to liability under section 487.

Turning to Rudow's substantive claim against the City under section 1983, we first note that, in order to avoid summary judgment and dismissal, Rudow must establish that Whitman acted under color of state law and that Rudow possessed a constitutionally protected right that was trammeled by the alleged conduct. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). As to the first component, Judge Sand concluded that Whitman's status as a state actor was sufficiently proved to warrant a trial. That determination has not been challenged on appeal. As to the second component, Rudow claims that a liberty interest in his status as an innocent person was created by various actions of the state. We conclude that he has no such constitutionally protected interest under the circumstances of this case.

■ Liberty interests protected by the Fourteenth Amendment may arise from the Due Process Clause itself or from state law. *Meachum v. Fano*, 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–39, 49 L.Ed.2d 451 (1976). The status right that Rudow claims is not among the fundamental liberty precepts explicitly enumerated in *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). *See Baden v. Koch*, 799 F.2d 825, 829 (2d Cir.1986). Rather, Rudow urges that the right springs from the "substantive" limitations that the City has placed on the HRC in delineating its authority to prosecute sexual harassment complaints. The state-created limits on which Rudow depends, however, relate solely to the procedural requirements for conducting hearings and reaching conclusions of fact and law. They govern how the HRC must conduct an adjudication, not the outcome of that adjudication. The state has issued no guarantee that Rudow would be found innocent; it has only guaranteed that certain proce-

dures would be followed in the HRC prosecution. Statutory procedural requirements without a separately articulable substantive right do not create a constitutionally protected interest in liberty. *Olim v. Wakinekona*, 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983); *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir.1979); *see Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985) (liberty interest cannot be defined by the procedures provided for its deprivation).

█ Rudow has competently alleged damage to his reputation, but has not offered a supplementary injury sufficient to meet the "reputation-plus" standard of *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). He has not suffered the loss of public employment, *see, e.g., Goetz v. Windsor Central School District*, 698 F.2d 606, 610 (2d Cir.1983), nor has he been prevented from practicing his profession, *Baden*, 799 F.2d at 830–31. His loss of the top job at his firm is an inadequate addendum to his reputation claim. *Id.* at 831. He has not been prevented from engaging in the everyday activities of life. *Paul v. Davis*, 424 U.S. at 708, 96 S.Ct. at 1164. The collateral consequences of his being adjudged guilty of sexual harassment do not abridge a property right to his business reputation, as they might if that right were based on a statute. *See Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir.1980) (affirmative property right to business goodwill created by Florida statute), *cert. denied sub nom. Rashkind v. Marrero*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). Moreover, Rudow waived a remedy directed at rehabilitating his business reputation when he refused the opportunity to present his evidence at the reopened HRC proceeding.

█ Finally, Rudow returns to the New York attorney misconduct statute, N.Y. Jud.Law § 487, claiming that the statute creates a right to be free of attorney deceit analogous to the business goodwill right in *Marrero*. He is correct that section 487 creates a constitutionally protected property right, *see Barrett*, 798 F.2d at 575–77,

but he is mistaken about the character of the right. In *Barrett*, state and federal attorneys defending a tort claim deceitfully covered up tortious state conduct that had resulted in the death of a state hospital patient. We held that the deceit, in violation of the predecessor to section 487, was an unconstitutional deprivation of the right of the deceased's estate to bring suit. 798 F.2d at 575–76. Rudow has not claimed either that the section 487 violation interfered with his right to sue or that there was other interference with his right to sue under section 487. Rather he claims a constitutional entitlement to be free of deceit under section 487's substantive provisions. His claim falls short. A violation of section 487 is not of constitutional magnitude; it is a garden variety tort. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986) (Due Process Clause is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States," quoting *Paul v. Davis*, 424 U.S. at 701, 96 S.Ct. at 1160). Rudow's direct action against the City under section 487, which provides, *inter alia*, triple damages for attorney deceit, was, until withdrawn, all the remedy to which Rudow was entitled.

Rudow has failed to articulate a constitutionally protected liberty interest, and his section 1983 claim against the City was properly dismissed. We need not discuss the adequacy of the remedy available to Rudow via the reopened HRC proceedings, a remedy that Rudow waived. Rudow claimed for the first time in his reply brief that he was entitled to at least nominal damages for the alleged denial of due process, independent of any underlying constitutional deprivation, under *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). His citations to the record on appeal, however, do not indicate any prior discussion of this issue and we will not entertain it at this late date. The judgment of the district court is affirmed.