FILED
United States Court of Appeals
Tenth Circuit

July 10, 2025

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

WESSLEY RODGERS,

    Plaintiff - Appellant,

v.

RAUL TORREZ,

    Defendant - Appellee.

No. 24-2046
(D.C. No. 1:22-CV-00641-KG-JFR)
(D. N.M.)

_____

ORDER AND JUDGMENT*
_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Plaintiff-Appellant Wessley Rodgers filed this suit under 42 U.S.C. § 1983

against Defendant-Appellee Raul Torrez, then-district attorney for Bernalillo County,

New Mexico, alleging that Torrez retaliated against Rodgers in violation of the First

Amendment.  Rodgers claimed that Torrez retaliated against him by filing a civil

action in state court naming a number of defendants, including Rodgers, seeking

declaratory and injunctive relief for alleged violations of New Mexico law.  The

district court granted summary judgment in favor of Torrez, concluding that he

---

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

enjoyed absolute prosecutorial immunity from § 1983 liability for bringing the underlying civil action. Rodgers appealed. We affirm.

## I.

## A.

On July 13, 2020, then-Bernalillo County District Attorney Raul Torrez initiated a civil action in the Second Judicial District Court for Bernalillo County, in New Mexico. The complaint named the plaintiff as "STATE OF NEW MEXICO ex rel. RAÚL TORREZ, District Attorney, Second Judicial District." App'x at 14. The named defendants included the New Mexico Civil Guard ("NMCG"), its members, and affiliates, including Wessley Rodgers.

The action sought declaratory and injunctive relief. Specifically, it sought to enjoin NMCG, a "private" group not affiliated with or overseen by the state of New Mexico, from "operating as an organized military unit and from assuming law-enforcement duties" without proper authority to do so. *Id.* at 14–18.

The suit followed a protest at the statue of Spanish conquistador Juan de Oñate in Albuquerque, New Mexico. At that protest, per the complaint, NMCG was present in military-style gear acting as a paramilitary unit without authority when an individual, not affiliated with NMCG, shot and injured another protester. The complaint claimed that NMCG's paramilitary activity heightened the threat to public safety and intimidated the public's exercise of First Amendment rights.

The stated overarching purpose of the complaint was "to enforce the Constitution and laws of the State and to protect the safety and well-being of the

citizens of New Mexico." *Id.* at 19. Among other provisions, the complaint alleged that the defendants had violated (1) "Article V, Section 4; Article XVIII, Section l; and Article II, Section 9 of the New Mexico Constitution," and (2) Section 30-27-2.1 of the New Mexico Annotated Statutes, by creating "a *per se* public nuisance." App'x at 40–43. Torrez cited Sections 36-1-18(A)(1) and 30-8-8(B) of the New Mexico Annotated Statutes as authorizing him to bring the suit.

Torrez named Rodgers in the lawsuit as "a member of NMCG." App'x at 21. Torrez based this allegation on Rodgers's appearance on a podcast where Rodgers discussed his affiliation with NMCG and participation in some of NMCG's activities. Rodgers, however, was not a member of NMCG when Torrez filed the lawsuit.

**B.**

On August 29, 2022, Rodgers initiated this lawsuit in the United States District Court for the District of New Mexico by filing his "Complaint Pursuant to 42 U.S.C. § 1983 for Damages From First Amendment Retaliation." App'x at 6 (formatting altered). As that title suggests, Rodgers's sole claim is one for "First Amendment retaliation," which he also describes as a "vindictive prosecution or malicious abuse of process" claim. *Id.* at 6, 9 (formatting altered). Rodgers's complaint alleges that Torrez named Rodgers as a defendant in the state civil injunctive and declaratory suit "to discourage [Rodgers's] engagement in public political speech," "out of malice and spite to further [Torrez's] own political ambitions." *Id.* at 8–9. In particular, the complaint alleges that Torrez retaliated against Rodgers for his speech during the above-mentioned podcast.

3

On June 29, 2023, Torrez moved for summary judgment, arguing that he is entitled to absolute prosecutorial immunity for filing the underlying civil injunctive and declaratory suit in state court. The district court granted Torrez's motion, agreeing that Torrez enjoyed absolute prosecutorial immunity from § 1983 liability for bringing the state civil suit. The court then entered final judgment for Torrez.

Rodgers timely appealed.

## II.

We review summary judgment decisions de novo. *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We also review de novo the determination that a government actor is entitled to absolute immunity. *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994).

## III.

The sole question before us is whether Torrez's conduct garners absolute prosecutorial immunity. We are persuaded that it does.

### A.

"Absolute prosecutorial immunity is a complete bar to a suit for damages[1] under 42 U.S.C. § 1983." *Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007)

---

[1] Despite its title, Rodgers's complaint seeks relief beyond damages. But Rodgers never mentions any of these other requested remedies on appeal. As a result, he has abandoned appellate review of any such sought forms of relief, if those desired remedies were not already abandoned below. *See, e.g., Stender v. Archstone-*

4

(citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)).  "It is well established that prosecutors are absolutely immune from suit under [§] 1983 concerning activities 'intimately associated with the judicial . . . process,' such as initiating and pursuing criminal prosecutions," and "that this absolute prosecutorial immunity extends to state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings."  *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991) (ellipsis in original) (quoting *Imbler*, 424 U.S. at 430–31).  "The principal rationale for applying absolute immunity in this context is 'to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation.'"  *Berryman v. Niceta*, --- F.4th ----, No. 23-1263, 2025 WL 1872778, at *5 (10th Cir. July 8, 2025) (quoting *Snell v. Tunnell*, 920 F.2d 673, 686–87 (10th Cir. 1990)).  "[A]bsolute prosecutorial immunity is intended to protect the judicial process, not the prosecutor."  *Chilcoat v. San Juan County*, 41 F.4th 1196, 1208 (10th Cir. 2022).

We take "a 'functional approach'" to absolute prosecutorial immunity, where we look "to 'the nature of the function performed, not the identity of the actor who performed it.'"  *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (per

---

*Smith Operating Tr.*, 910 F.3d 1107, 1117 (10th Cir. 2018) (deeming claims abandoned where not mentioned in opening brief); *Whitehead v. Marcantel*, 766 F. App'x 691, 702 (10th Cir. 2019) (unpublished) (deeming request for injunctive relief waived where plaintiff sought such relief in the district court but failed to pursue that relief in his opening appellate brief).

curiam) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)).  That is, we focus on "the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful."  *Id.* (quoting *Buckley*, 509 U.S. at 271).

"[F]unctions that serve as an integral part of the judicial process or that are intimately associated with the judicial process are absolutely immune."  *Id.* (quoting *Rogers v. O'Donnell*, 737 F.3d 1026, 1031 (6th Cir. 2013)).  "Ours is a continuum based approach and the more distant a function is from the judicial process, the less likely absolute immunity will attach."  *Id.* (brackets omitted) (quoting *Mink*, 482 F.3d at 1261).  Along this continuum, "the determinative factor is advocacy because that is the prosecutor's main function."  *Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir. 1985) (internal quotation marks omitted).  On the immunity end of the continuum is an actor "initiating and presenting the government's case," because the actor is cast "in the role of an advocate for the government."  *Mink*, 482 F.3d at 1261.  On the non-immunity end lie "actions that are investigative or administrative in nature."  *Id.* at 1262.  From these extremes, we have broadly set forth the rule of absolute immunity as applied to government attorneys as follows:

> A government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings are not entitled to absolute immunity.  Rather, absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government.

*Benavidez*, 931 F.3d at 1231.

6

**B.**

Applying our absolute immunity precedents to the facts of this case, we hold that Torrez is entitled to absolute immunity for drafting and filing the complaint in the state civil injunctive and declaratory suit and naming Rodgers as a defendant in that suit. Acting as district attorney, Torrez brought the underlying suit on behalf of New Mexico, in the name of "public safety," App'x at 4, and sought to stop certain individuals from engaging in certain conduct Torrez believed to violate state law. Torrez's actions here—preparing a court filing and initiating a civil proceeding to enforce state law—were "functions analogous to those of a prosecutor" initiating a criminal proceeding. *See Pfeiffer*, 929 F.2d at 1489. In filing the underlying state suit and naming Rodgers as a defendant, Torrez took on the role of advocate for New Mexico and its people, "the prosecutor's main function," *Rex*, 753 F.2d at 843, through actions "'intimately associated' with the judicial process," *Benavidez*, 931 F.3d at 1231 (quoting *Imbler*, 424 U.S. at 430). These are functions that enjoy absolute prosecutorial immunity.

Rodgers chiefly resists on the basis that the underlying state civil suit "was a *civil* proceeding, not a *criminal* proceeding." Aplt. Br. at 5. But we have long "recognized absolute immunity as extending to 'government lawyers involved in civil proceedings.'" *Benavidez*, 931 F.3d at 1230–31 (quoting *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1373 n.4 (10th Cir. 1991)); *see Pfeiffer*, 929 F.2d at 1489. Thus, the civil nature of the underlying suit, by itself, does not defeat absolute immunity.

7

Rodgers recognizes that "government attorneys *defending* a [civil] case" can engage in functions that garner absolute immunity, but he maintains that government attorneys who "*initiat[e]* [ ] civil proceedings" cannot. *See* Aplt. Br. at 5 (emphases added). But that broad argument, too, cannot get around our precedents. We have previously held that government actors enjoy absolute prosecutorial immunity for functions intimately associated with the civil proceedings those actors initiated. *See, e.g.*, *Scott v. Hern*, 216 F.3d 897, 909–10 (10th Cir. 2000) (holding county attorney absolutely immune from a § 1983 claim arising out of the attorney filing a petition in a civil commitment proceeding). We have even held government actors absolutely immune where the conduct at issue was the government actor's decision as to whether to initiate the civil proceeding. *See Meade v. Grubbs*, 841 F.2d 1512, 1532–33 & n.18 (10th Cir. 1988) (holding state attorney general and state health department commissioner absolutely immune from § 1983 claim based on their failure to initiate either a civil or criminal complaint against other state officials), *abrogated in part on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). And so, the lone fact that a government lawyer *initiates* a civil proceeding does not render absolute prosecutorial immunity inapplicable, either.

We do not mean to suggest that there will never be a case where a government lawyer initiating a civil proceeding will be acting so far outside of the prosecutorial sphere such that absolute immunity will not attach. All we say here is that this is not such a case. Again, Torrez sought to prevent further acts he believed to be illegal from occurring. Torrez did not, for example, seek to recover personal damages in the

underlying suit, ostensibly not as easily analogized to a prosecutor's role and function.  There is also no suggestion that Torrez lacked the authority, in his capacity as a district attorney, to initiate the underlying state civil suit.[2]  In all, Torrez carried out functions analogous to those of a prosecutor, advocating for the government, covered by absolute immunity.

At the end of the day, even if Rodgers is right that Torrez brought the state suit and named Rodgers as a defendant "purely [to] punish" Rodgers "for the political speech he had made," and Torrez was "politically motivated" in so doing, *see* Oral Arg. Audio at 5:57–58, 10:17–22, this "is a cost required" by Supreme Court precedent "to be paid," *Lerwill v. Joslin*, 712 F.2d 435, 441 (10th Cir. 1983).  As the Court has reasoned:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative.  In this instance it has been thought in the end better to leave unredressed the wrongs done by

---

[2] In the underlying suit, as mentioned above, Torrez asserted that he had the authority to initiate the state suit pursuant to Sections 36-1-18(A)(1) and 30-8-8(B) of the New Mexico Annotated Statutes.  Below, the district court concluded that Torrez was statutorily authorized to bring the state suit in his district attorney capacity.  Rodgers has made no argument to us that the district court's conclusion was wrong.

But even if Torrez over-read his authority under those statutes and technically lacked the statutory authority to bring the underlying civil declaratory and injunctive suit (or any portion of it), the result here would not change.  We have previously held that absolute prosecutorial immunity attaches where a government lawyer has carried out a prosecutorial function in a technically unauthorized manner.  *See Lerwill v. Joslin*, 712 F.2d 435, 437–41 (10th Cir. 1983) (holding part-time city attorney absolutely immune from § 1983 suit based on attorney filing criminal charges against plaintiffs, even though the prosecution was initiated under statute that attorney was not authorized to invoke).  And this is a not case where Torrez had "no colorable claim of authority" for filing the state suit.  *See id.* at 439 (assuming that a prosecutor may lose his absolute immunity for such unauthorized prosecutorial acts).

dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Imbler*, 424 U.S. at 428.

## IV.

For the reasons stated, we AFFIRM.

Entered for the Court

Allison H. Eid
Circuit Judge